CRIMMINS & PIERCE *et al. v.* UNITED STATES (No. 1488). UNITED STATES *v.* RINGK & Co. (No. 1514).[1]

MOHAIR NOILS.
> Reviewing the authorities bearing on the paragraph of the tariff involved, it is clear that the "wool wastes" of paragraph 651, tariff act of 1913, embracing as it does all noils, includes noils of hair from Angora or alpaca goats.

United States Court of Customs Appeals, May 3, 1915.

APPEALS from Board of United States General Appraisers, Abstract 36761 (T. D. 34865) and G. A. 7649 (T. D. 34997).

[No. 1488 reversed; No. 1514 affirmed.]

*Allan R. Brown* for appellants.
*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:
Two appeals from two decisions of the Board of General Appraisers. In United States *v.* A. H. Ringk & Co. the merchandise was returned

---

[1] Reported in T. D. 35392 (28 Treas. Dec., 767).

as consisting of "short pieces of mohair waste from slivers and are picked and carded again for further use." In Crimmins & Pierce *et al. v.* United States the merchandise was returned as "mohair noils." In each case they were assessed by the collector for duty as "waste not specially provided for" under the provisions of paragraph 384 of the tariff act of 1913, reading—

384. Waste, not specially provided for in this section, 10 per centum ad valorem.

They are claimed by the importers to be entitled to free entry under the provisions of paragraph 651, which reads:

651. Wool wastes: All noils, top waste, card waste, slubbing waste, roving waste, ring waste, yarn waste, bur waste, thread waste, garnetted waste, shoddies, mungo, flocks, wool extract, carbonized wool, carbonized noils, and all other wastes not specially provided for in this section. This paragraph shall be effective on and after the first day of December, nineteen hundred and thirteen, until which time the rates of duty now provided by Schedule K of the existing law shall remain in full force and effect.

In Crimmins & Pierce *et al. v.* United States the Board of General Appraisers overruled the protest upon the ground that the record disclosed nothing that would warrant a disturbance of the collector's action, which was presumptively correct. There were, however, before the board samples of the merchandise and the return of the appraiser, leaving no doubt as to their character being that of mohair noils and which, in our view of the case, are sufficient to raise the legal issues here submitted for decision.

In United States *v.* A. H. Ringk & Co. the Board of General Appraisers sustained the protest.

In the former case the importers are the appellants, in the latter the Government. The legal considerations appertaining to each are the same, and the controlling question is, whether or not, as used in the tariff act of 1913, mohair or the hair of the angora goat is a wool?

An initial question arises as to whether or not wool noils are a waste. It would seem that the statute (par. 651) concludes this question. It opens with the words "*wool wastes*," predicated of which the wool wastes are enumerated, the first included being that of "all noils" and the last "all other wastes not specially provided for in this section." It seems to us that the enumerations are all predicated of the words "*wool waste*," and that all the enumerations within the paragraph in order to be included therewithin must be deemed first, wool, and, second, wastes.

An essentially similar case arose in Hormann, Schutte & Co. *v.* United States (153 Fed., 868). In that case paragraph 414 of the tariff act of 1897 began with a provision for buttons, parts of buttons, button molds, and blanks, the provision being followed by a colon. Thereupon appeared an enumeration of various kinds of buttons with

different rates of duty attached.   Notwithstanding the fact that in the last part of the paragraph the word "buttons" alone was used, the Circuit Court of Appeals for the Second Circuit held that each of the classes in the last part of the paragraph, by virtue of the terms with which the paragraph began, must be considered as covering not only buttons, but all parts of buttons, button molds, and blanks.

The case here is a much stronger one, for it reads into the paragraph no words, but confines itself to the language employed by Congress and gives effect to the title words of the paragraph in their natural, grammatical, and logical sense.   This relation of words in the statute in our opinion concludes the question of whether or not wool noils are to be considered wool waste.   This seems too plain for discussion.  Likewise, this consideration makes the difference between the wool waste in one case and the wool noils in the other unimportant.

The more seriously controverted question in the case is whether or not the hair of the angora goat is a "wool" within the meaning and as used in the tariff act of 1913.   Preliminarily, the mind becomes in a more receptive condition in reaching a conclusion in the affirmative by bearing in mind the fact that all wool is in fact hair and so defined by all lexicographic authorities.   The difference between the two is the condition of the fiber, as will hereinafter be shown by quoted and uniformly accepted definitions.   There is no claim here of commercial designation, and we are therefore left to the ordinary meaning of the term.

There has been much said in the briefs of the legislative classifications made of the hair of the alpaca goat and much as to the departmental and judicial construction put upon the terms.   While this field of investigation and source of light available to the court is fruitful and we think would conduce to the same conclusion herein reached, in view of the uniform trend of the lexicographic authorities, aside from the other phases of the case herein discussed by the court we deem an extended review of the legislative classifications and the departmental and judicial constructions placed upon the term an unnecessary extension of this opinion.   The lexicographers thus declare the ordinary understanding upon the subject:

Webster's Dictionary:

*Mohair.*—The long, silky hair *or wool* of the Angora goat,   *   *   *.
*Wool.*—1. That soft, curled, or crisped species of hair which grows on sheep *and some other animals,*   *   *   *.

Worcester's Dictionary:

*Mohair.*—1. The soft, fine hair *or wool* of the Angora goat, of which camlets and other costly stuffs are made.   *   *   *
*Wool.*—1. The soft hair or fleecy covering of sheep, goats, *and some other animals.*   *   *   *

### Standard Dictionary, Twentieth Century Edition:

*Mohair.*—1. The hair of the Angora goat of Asia Minor.   *   *   *

*Wool.*—1. The soft and more or less long, curly, or crisped hair obtained from sheep *and some allied animals*, and used chiefly in the manufacture of clothing.   *   *   * *Among commercial wools of importance* are those obtained from the alpaca   *   * · *, the llama, *the Angora goat*, the camel, and from the Cashmere goat of the Himalayas.   *   *   *

### The Century Dictionary and Cyclopedia:

*Mohair.*—1. The hair of the Angora goat, a native of Asia Minor.—2.   *   *   *; also, an imitation of the *real mohair made of wool* and cotton, much used for women's dress.

*Wool.*—The fine, soft, curly hair which forms the fleece or fleecy coat of the sheep and some other animals, as the goat and alpaca, in fineness approaching fur.   *   *   * 4.—*   *   *   *Angora wool, the wool of the Angora goat.*   *   *   *

### Encyclopædia Britannica, Eleventh Edition:

*Mohair.*—The hair of a variety of goat originally inhabiting the regions of Asiatic Turkey of which Angora is the center, whence the animal is known as the Angora goat.   *   *   *

*Wool, worsted, and woolen manufactures.*—   *   *   * At what point an animal fiber ceases to be hair and becomes wool it is impossible to determine, because the one by imperceptible gradations merges into the other, so that a continuous chain can be formed from the finest and softest merino to the rigid bristles of the wild boar. Thus *the fine soft wool* of the Australian merino *merges into* the cross-bred of New Zealand; the cross-bred of New Zealand merges into the long English and luster wool, which in turn merges into alpaca *and mohair materials* with clearly marked but undeveloped scale structure.   *   *   *

### New International Cyclopedia:

*Mohair.—The wool of the Angora goat* of Asia Minor and South Africa. Few animals have so beautiful a covering as the fine, soft, silky, long, and always *pure white wool of this goat.* Each animal at the annual clip in April or May yields from two pounds to four pounds *of wool.* The fabric *mohair made from this wool* is characterized by its light weight, smooth, dust-shedding surface, and luster.   *   *   *

*Wool.*—The soft, hairy covering of sheep *and several allied animals.*   *   *   *

The conspectus of the legislation of Schedule K of the tariff act of 1913 reveals an apparent legislative classification conducing to the same result. The schedule consists of paragraphs 286 to 310, inclusive. Paragraph 304 therein defines wool as used in connection with any manufactured article of which it is a component material. The paragraph reads:

304. Whenever in this section the word "wool" is used in connection with a manufactured article of which it is a component material, it shall be held to include wool or hair of the sheep, camel, *or other like animals*, whether manufactured by the woolen, worsted, felt, or any other process.

Aside from the force of the above correlated definitions, which uniformly when read together speak of the wool of "other like animals" and at the same time enumerate and classify as one of the "like animals" to the wool-producing sheep the Angora goat, the inquiry what is meant by "other *like* animals" is not difficult of conception when taken in connection with the purpose of the paragraph. That purpose is, of course, to include within the paragraphs and at the rates of

duty therein prescribed all similar materials. The schedule is a classification and enumeration of materials and not animals.

"Like" animals, therefore, does not refer to physical construction or appearance of the animal itself, but to the fleece produced by and from the animal; and, therefore, embraced within the scope of other like animals must be included all animals producing wool or hair like that of the sheep or camel, of which the hair of the Angora goat, alpaca, and others are distinctly and unquestionably of a class. Moreover, the title of the schedule is "Wool, and manufactures of." While the rule is, of course, that the title of an act or of a paragraph does not control the legislation embraced therewithin, it is in cases of doubt an accepted source of information and can always be looked to as one of the guides to the legislative purpose. This rule obtains as to the schedule titles in tariff laws. The doctrine is appropriately stated in Hollender *v.* Magone (149 U. S., 586, 591), wherein the Supreme Court said:

The multitude of articles upon which duty was imposed by the tariff act of 1883 are grouped in that act under fourteen schedules, each with a different title, and all that was intended by those titles *was a general suggestion as to the character of the articles within the particular schedule,* and not any technically accurate definition of them. See also Wilson *et al. v.* Spaulding (19 Fed., 304).

In this particular there is a singular and exceptional uniformity maintained throughout Schedule K, denominated "wool and manufactures of," in that it includes for duty purposes as materials only the hair and the wool of animals usually and commonly regarded as wool-bearing animals.

Moreover, paragraphs 305, 306, 307, and 308 denounce particular rates of duty upon the hair of the Angora and alpaca goats. Congress has been precisely careful in this schedule to levy a duty upon every seemingly possible condition of the hair of the Angora goat. Thus paragraph 305 levies a duty upon the hair on the skin; 306 on tops made from the hair; 307 on the yarn made from the hair; 308 on all manufactures of every description made by any process wholly or in chief value of the hair of the Angora goat. After such diligent care to specifically enumerate every possible condition of Angora goat hair upon which Congress wished to place a rate of duty, the fact that it omitted any specific announcement of duty as to the noils or waste from the hair of the Angora goat is significant and conduces to the same conclusion.

More significant yet, and what would seem to be almost if not quite conclusive in the case, is the proviso, in effect, though not in name, to paragraph 651. After specifically naming as free of duty all wool wastes and woolen noils Congress by the said proviso to the said paragraph proceeded to suspend operation thereof for a period during which the whole and every paragraph of Schedule K, its counterpart in legislation, was suspended, to wit, to "on and after the 1st day of December, 1913." In suspending the counterpart legislation Con-

gress by this proviso in referring to such includes all "the rates of duty now provided by Schedule K of the existing law." Unless Congress deemed that mohair noils and mohair waste were within paragraph 651, it would not have been a part of this legislative concept to suspend its contemporaneous operation as to the duties provided upon the hair of the Angora goat in Schedule K. The fact that Congress apparently did purpose to suspend the operation of paragraph 651 until and contemporaneously with the rates of duty prescribed in Schedule K upon the hair of the alpaca goat is a strong legislative suggestion that Congress deemed the subject matter of Schedule K and paragraph 651 coextensive in terms.

We are therefore of the opinion, and it is ordered, that the decision of the Board of General Appraisers in Crimmins & Pierce *et al. v.* United States should be and hereby is *reversed,* and that the decision in United States *v.* A. H. Ringk & Co. be and the same hereby is *affirmed.* Decree accordingly.