ROSENBERG & CO. *v.* UNITED STATES (No. 1587).[1]

1. CONSTRUCTION—LEGISLATIVE HISTORY SHOWING INTENT

The language of successive tariff acts shows that Congress has always either considered the hair of the Angora goat not to be wool, or has thought it best, for purposes of greater certainty, to refer specially to it and treat it independently of wool as a subject of classification

2. CONSTRUCTION—LEGISLATIVE HISTORY SHOWING INTENT.

The history of the passage of the tariff act of 1913 indicates that Congress intended to impose a higher rate of duty upon the products, fabrics, and manufactures of the hair of the Angora goat than upon similar articles when composed of the hair of certain other animals

3. CONSTRUCTION—CHANGE OF LANGUAGE SIGNIFYING CHANGE OF MEANING.

In the tariff acts of 1897 (par. 383) and 1909 (par. 395) it was provided that when the word "wool" is used in connection with a manufactured article of which it is a component material it shall be held to include the wool or hair of the sheep, camel, goat, alpaca, or other animal. The corresponding provision in the tariff act of 1913 (par. 304) omits the words "goat, alpaca," and changes the broad provision "other animal" to the narrower one "other like animals." To hold that a manufacture of wool, under the tariff act of 1913, includes a manufacture of Angora goat hair would be to deny any meaning to this change in legislative language.

4. CONSTRUCTION AIDED BY CONTEXT—TAUTOLOGY TO BE AVOIDED.

Paragraphs 305 to 309, inclusive, tariff act of 1913, levy duty upon the hair of the Angora goat and products, fabrics, and manufactures of it. If the term "wool," as used in the act in connection with manufactures, includes Angora goat hair, these provisions are unnecessary.

5. CONSTRUCTION—GENERAL DESCRIPTION PREVAILS OVER EO NOMINE ONE IF CONGRESS SO INTENDED.

The rule that an *eo nomine* designation prevails over a general description must give way to an expressed intention of Congress to the contrary.

---

[1] Reported in T. D. 36510 (30 Treas. Dec., 1106).

**6. ANGORA GOAT HAIR COAT LININGS IN THE PIECE, HOW DUTIABLE.**

Angora goat hair coat linings, not cut to form or shape, are dutiable as a manufacture of Angora goat hair under paragraph 308, tariff act of 1913, and not as coat linings of wool under paragraph 290.

## United States Court of Customs Appeals, May 31, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7741 (T. D. 35541). [Affirmed.]

Curie, Smith & Maxwell (Thomas M. Lane of counsel) for appellants.

Bert Hanson, Assistant Attorney General (Charles D. Lawrence, special attorney, of counsel), for the United States.

[Oral argument December 10, 1915, by Mr. Lane and Mr. Lawrence; reargued April 30, 1916.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.[1]

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case, it is agreed, is so-called coat linings and is in chief value of the hair of the Angora goat. As represented by the sample submitted, it appears to be thin cloths, of various colors, apparently imported in the web or piece. It is not cut to form or shape and we understand is to be used as material.

There is no issue of fact, the sole controversy being whether the merchandise shall be classified under paragraph 308 of Schedule K of the tariff act of 1913, as claimed by the Government and held by the Board of General Appraisers, or under paragraph 290 thereof, as claimed by the importers. These paragraphs are as follows:

290. Women's and children's dress goods, coat linings, Italian cloths, bunting, and goods of similar description and character, composed wholly or in chief value of wool, and not specially provided for in this section, 35 per centum ad valorem.

308. Cloth and all manufactures of every description made by any process, wholly or in chief value of the hair of the Angora goat, alpaca, and other like animals, not specially provided for in this section. 40 per centum ad valorem.

As the determination of the question involves the construction of paragraph 304, that also is here quoted:

304. Whenever in this section the word "wool" is used in connection with a manufactured article of which it is a component material, it shall be held to include wool or hair of the sheep, camel, or other like animals, whether manufactured by the woolen, worsted, felt, or any other process.

The importers' contention is that the term "wool," both in its common meaning and as used in said Schedule K, includes the hair of the Angora goat; that therefore "wool" as used in paragraph 290 includes such hair; that the term "coat linings" employed in said paragraph is an eo nomine description of the merchandise here, and takes precedence over the generic name "cloth" in paragraph 308, as well as over the descriptive designation "all manufactures of every description made by any process, wholly or in chief value of the hair

---
[1] Reargument before Montgomery, Smith, Barber, De Vries, and Martin, Judges.

of the Angora goat," also contained therein; and finally, that there is nothing in the language or legislative history of Schedule K showing an intention to remove "coat linings" from their long-established classification under paragraph 290 and its predecessors.

For the Government it is argued that Congress, in framing the act of 1913, has shown a definite purpose to clearly distinguish Angora goat's hair, alpaca hair, and their products from wool and its products; that the legislative history of Schedule K gives support to this claim; and hence, that to give full effect·to this congressional purpose the classification below must be upheld here.

We first somewhat consider the relevant legislative history.

The tariff acts, prior to that of August 30, 1842, imposed duty upon wool and its products and, so far as we have ascertained, contained no reference whatever to the hair of the camel, goat, or other like animals.

Section 1, paragraphs 1 to 7, of the act of August 30, 1842, assessed duty upon wool, unmanufactured, and upon various manufactures thereof. In paragraph 8 duty was also imposed upon "Thibet, Angora, and all other goat's hair or mohair, unmanufactured," and upon certain mentioned "and all other manufactures of goat's hair or mohair."

The act of July 30, 1848, in Schedule C, made dutiable "manufactures of wool or of which wool shall be the component material of chief value," also "wool unmanufactured;" in Schedule D a different rate of duty was provided for "manufactures of goat's hair or mohair, or of which goat's hair or mohair shall be the component material," and in Schedule E a still different rate was provided for "Angora, Thibet, and other goat's hair or mohair, unmanufactured."

In the act of March 2, 1861, section 12, paragraph 1, duty was levied "on all wool unmanufactured, and all hair of the alpaca, goat, and other like animals unmanufactured."

In the act of June 30, 1864, section 4, like descriptive terms were employed relating to the raw materials, wool and hair, and various duties were assessed upon the same and fabrics and manufactures thereof. In section 5,·paragraph 2, of this act, a clear distinction was made between certain articles made of wool and those made of worsted, mohair, alpaca, or goat's hair.

The act of March 2, 1867, section 1, provided "there shall be levied, collected, and paid on all unmanufactured wool, hair of the alpaca, goat, and other like animals, imported from foreign countries, the duties hereinafter provided." All wools, hair of the alpaca, goat, and other like animals, as aforesaid, shall be divided for the purposes of fixing duties to be charged thereon into three classes, to wit, class 1, clothing wool (under this class wools alone are mentioned);·class 2, combing wools (under this division certain wools are specified and

also all hair of the alpaca, goat, and other·like animals); class 3, carpet wools and other similar wools (under this class certain wools and others of a character like those the subject of former importations are named).

Following this classification, the section provides for distinctive samples of the various kinds of wool or hair embraced therein to be prepared by the direction of the Secretary of the Treasury and deposited in the various customhouses for the purpose of using the same as standards of comparison in determining the classifications last mentioned, and then provides for the duties upon the three classes, the first being upon "wools of the first class," the second being "upon wools of the second class and upon all hair of the alpaca, goat, and other like animals," and the third being "upon wool of the third class," followed by provisions for various duty rates upon products of these raw materials.

These provisions in Schedule K have from time to time been substantially reenacted in all the tariff acts (except as hereinafter mentioned) to and including paragraph 360 of the act of 1909, the first part of which was as follows:

360. All wools, hair of the camel, goat, alpaca, and other like animals shall be divided, for the purpose of fixing the duties to be charged thereon, into the three following classes: * * *.

Then follow provisions in the paragraph for classification thereunder corresponding to and very like those above mentioned of the act of 1867, and it is therein declared that class 2 shall include certain enumerated combing wools and the "hair of the camel, Angora goat, alpaca, and other like animals."

The exception to the foregoing legislative treatment of wool and hair for duty purposes may be found in the tariff act of 1894, which in paragraph 685 placed in the free list "all wool of the sheep, hair of the camel, goat, alpaca, and other like animals," while paragraph 279 of Schedule K thereof assessed a duty upon certain wool wastes and upon "wool of the sheep, hair of the camel, goat, alpaca, or other like animals in the form of roving, roping, or tops." In succeeding paragraphs of Schedule K provisions were made for duties upon various yarns, cloths, and other manufactures of wool and hair of the camel, goat, alpaca, or other animals.

It may be observed that in the act of 1890 the word "camel" for the first time appears in Schedule K before the word "goat" in describing the raw materials which are the subject of classification thereunder.

All the tariff acts from that of 1864 to 1894, both inclusive, in paragraphs not herein specially referred to, contain in Schedule K provisions for duty rates upon products, fabrics, and articles com-

posed wholly, or in part, or in chief value, as the case may be, of wool, or of the hair of the goat, alpaca, or other like animals.

In the act of 1897 all detailed reference in each paragraph of Schedule K to the raw materials from which the various things thereunder assessed were made or composed was omitted, and such materials were covered by the use of the word "wool." At the end of the schedule paragraph 383 is found, which reads as follows:

383. Whenever in any schedule of this act the word "wool" is used in connection with a manufactured article of which it is a component material, it shall be held to include the wool or hair of the sheep, camel, goat, alpaca, or other animals, whether manufactured by the woolen, worsted, felt, or any other process.

Schedule K in the act of 1909 affords similar treatment of the subject matter thereof, and its closing paragraph (395) is practically identical with that last quoted.

Paragraph 304 of the act of 1913, already quoted, is identical for the purposes of this case with paragraph 395 of the act of 1909, except that the words "goat, alpaca" are omitted and "other animal" is changed to "other like animals."

So far as we are advised, the term "coat linings" first appeared in Schedule K of the act of 1883, wherein it was provided that "women's and children's dress goods, coat linings, Italian cloths, and goods of like description composed in part of wool, worsted, the hair of the alpaca, goat, or other animals" should be subjected to certain specific and ad valorem duties. The quoted provision, in substantially identical language, was reenacted in Schedule K of the acts of 1890 and 1894, but in 1897 the component material was referred to as "wool" in harmony with a like reference to component raw materials in other paragraphs of Schedule K, already pointed out.

We think this review of legislative history establishes that prior to the tariff act of 1913 Congress in providing for the assessment of duty upon the hair of the Angora goat and for articles the duty on which was based upon the fact that such hair was a component material thereof, either did not consider it to be wool or, for purposes of greater certainty, thought best to refer specially thereto and treat the same independently as a subject of classification. Upon no other theory can the persistent coupling of the material "wool" with that of the hair of the Angora goat be accounted for. If the word "wool" for the purposes of the duty paragraphs was sufficient to include the "hair of the goat" it was unnecessary to use the latter term.

In the case of United States *v*. Klump (169 U. S., 209, 216, 217) the Supreme Court said, discussing various tariff provisions herein referred to:

Doubtless wool considered as the sheep's coat might be said to be the sheep's hair, and fleeces of the hair of the Angora goat, the llama, the alpaca, and other like animals,

might be called their wool. * * * But the acts of 1890 and 1894, as well as prior tariff acts, distinguished the wool of the sheep from the hair of the camel, goat, and other like animals, as raw materials.

See also Oppenheimer v. United States (90 Fed., 796) and Wolff v. United States (113 Fed., 1001).

Coming now to the tariff act of 1913, we observe that Schedule K omits the provision for duty upon raw wool, but in paragraph 286 thereof assesses an 8 per cent ad valorem duty upon combed wool or tops and roving or roping made wholly or in part of wool or camel's hair and on other wool and hair which have been advanced in any manner or by any process of manufacture beyond the washed or scoured condition, not specially provided for in this section. This is followed in succeeding paragraphs by provisions for various rates of duty upon divers manufactures of wool with a declaration in paragraph 304, above quoted, that the word "wool" when used in connection with a manufactured article of which it is a component material "shall be held to include wool or hair of the sheep, camel, or other like animals whether manufactured by the woolen, worsted, felt, or any other process." This omission of the words "goat, alpaca," found in the predecessor paragraphs and the other changes in phraseology at once suggest that Congress did not intend the word "wool" when used to describe the component material of any manufactured articles, at least so far as the duty paragraphs are concerned, should be held to include the hair of the Angora goat, alpaca, and other like animals. By no other construction can full force be given to this deliberate omission of the words "goat, alpaca" by Congress, and that it was so intended is entirely obvious from the provisions in paragraphs 305 to 309, both inclusive, which immediately follow.

Paragraph 305 expressly imposes a duty upon "hair of the Angora goat, alpaca, and other like animals," and the succeeding named paragraphs declare dutiable certain products and fabrics thereof, and also "all manufactures of every description made by any process" wholly or in chief value of such materials.

As one of the facts in the history of this legislation we have examined to some extent the proceedings before the Ways and Means Committee which had charge of the preparation not only of the tariff act of 1909 but of 1913 as well. Briefly referring to those of 1909, it appears that it was represented to the committee that the hair of the Angora goat and its products ought, for the purpose of protecting that industry, to be assessed at a higher rate of duty than wool and its products. Evidence was given tending to show that Angora goat raising in this country mainly existed in Texas, where it had been of commercial importance for then about 12 years. See volume 5, Tariff Hearings, 1908–9 (pp. 5127 et seq.). These representations, however, did not result in the requested change in the law.

The matter was again brought to the attention of the committee in its preparation of the tariff act of 1913. See volume 4 of the Tariff Schedules Hearings (pp. 4287–4306). Representatives of producers of Angora goat hair, as well as manufacturers thereof in this country, appeared before the committee asking that the raw material and the manufactured products thereof should be assessed at a higher rate than wool and its products upon the ground that it cost more to produce mohair (Angora goat hair) than wool. A witness told the committee that mohair was nothing like wool except that it grew upon an animal; that it was no more like wool than cotton, and that different products were made from it. The bill as reported from the committee, and which finally became the law we are considering, strongly suggests that these representations bore a desired fruit. The committee in its report accompanying the bill, at page XXIV, in a paragraph entitled "Manufactures of Wool," said that it had given Schedule K very careful study and that the "result has been to make raw wool free of duty," and to give a material reduction in the products and fabrics thereof.

Resurveying now, briefly, the whole situation, these facts stand out in bold relief: Prior to the act of 1913 and during the life of several preceding tariff acts, goat's hair, sometimes specially including the hair of the Angora goat, and at other times not, had been *eo nomine* referred to in connection with wool, accompanied by the declaration that "for the purpose of fixing the duties to be charged thereon" all wools and the hair of the goat should be classified as therein prescribed; that in the later of those acts it was purposely declared, evidently to save tautology, that when wool was referred to in connection with manufactured articles it should be held to include the hair of the goat, alpaca, or other animals; that following the recited representations made to the committee having in charge the tariff act of 1913 the hair of the Angora goat, alpaca, and other like animals was for duty purposes at least segregated from wool and declared to be dutiable; that raw wools and the hairs of certain animals were given free entry, and a higher rate of duty was imposed upon the products, fabrics, and manufactures of the hair of the "Angora goat, alpaca, and other like animals" than was imposed therein upon similar articles when composed of wool, as legislatively defined; not only this, but also that Congress took pains to declare that "wool," when used in connection with a manufactured article of which it was a component material, should be held to include not wool or hair of the sheep, camel, goat, alpaca, or other animal, as had been declared in previous acts, but that it should be held to include wool or hair of the sheep, camel, or other like animals, thereby excluding the hair of the Angora goat.

We are now asked to say that, notwithstanding these salient facts, the hair of the Angora goat is nevertheless wool for one of the purposes of paragraph 290. It is obvious, if this be done, that it would clearly be disregarding the mandate of Congress, implied by this change of language from paragraph 395 of the act of 1909 to that of paragraph 304 in the act of 1913, that the hair of the Angora goat should not be so held.

The coat linings in this case being cloth in chief value of Angora goat hair and being also confessedly a manufacture thereof, we think they can not be classified as claimed by the importers.

While it is true, as urged by the importers, that the doctrine that an *eo nomine* description takes precedence over a general one is well established, yet that rule is one of construction only and has been adopted and recognized for the purpose of ascertaining the legislative intent. This rule, however, must be taken with the qualification that if Congress has indicated in a given case its intent that such a rule is not to apply it can not in such case be successfully invoked. Cohn v. United States (4 Ct. Cust. Appls., 378; T. D. 33536).

Holding as we do that the clear intent of the Congress in the act of 1913 was, for the purpose of assessing duties upon Angora goat hair, the named products "and all manufactures of every description" wholly or in chief value thereof, to place the same in a class by themselves, it becomes unnecessary to consider any other of the importers' contentions.

The conclusion reached in the case of Crimmins v. United States (6 Ct. Cust. Appls., 137; T. D. 35392), cited by the importers, is not conclusive of the issue here. The Angora goat hair waste there under consideration was not, and was not claimed to be, within any of the provisions of paragraphs 305 to 309, both inclusive. Moreover, it was said in that case that those paragraphs levied "a duty upon every seemingly possible condition of the hair of the Angora goat," within which characterization the merchandise here confessedly is.

The judgment of the Board of General Appraisers is *affirmed*.

SMITH and MARTIN, Judges, concur in the opinion; MONTGOMERY, Presiding Judge, concurs in the result.

------

### CONCURRING OPINION.

DE VRIES, Judge:

Because to my mind the logic of the opinion herein clearly conflicts with the decision of this court in Crimmins & Pierce *et al. v.* United States (6 Ct. Cust. Appls., 137; T. D. 35392), I am, on careful review, unable to assent herein.

The one decisive issue in that case turned upon the question whether or not paragraph 290 of the tariff act of 1913 included the hair of the Angora goat.   It was there said:

The more seriously controverted question in the case is whether or not the hair of the Angora goat is a "wool" within the meaning and as used in the tariff act of 1913.

\*        \*        \*        \*        \*        \*        \*

The conspectus of the legislation of Schedule K of the tariff act of 1913 reveals an apparent legislative classification conducing to the same result.   The schedule consists of paragraphs 286 to 310, inclusive.   Paragraph 304 therein defines wool as used in connection with any manufactured article of which it is a component material. The paragraph reads:

304.   Whenever in this section the word "wool" is used in connection with a manufactured article of which it is a component material, it shall be held to include wool or hair of the sheep, camel, *or other like animals*, whether manufactured by the woolen, worsted, felt, or any other process.

Aside from the force of the above correlated definitions, which uniformly when read together speak of the wool of "other like animals" and at the same time enumerate and classify as one of the "like animals" to the wool-producing sheep the Angora goat, the inquiry what is meant by "other *like* animals" is not difficult of conception when taken in connection with the purpose of the paragraph.   That purpose is, of course, to include within the paragraphs and at the rates of duty therein prescribed all similar materials.   The schedule is a classification and enumeration of materials and not animals.

"Like" animals, therefore, does not refer to physical construction or appearance of the animal itself, but to the fleece produced by and from the animal; and, therefore, embraced within the scope of other like animals must be included all animals producing wool or hair like that of the sheep or camel, of which the hair of the Angora goat, alpaca, and others are distinctly and unquestionably of a class.

The opinion submitted, after reviewing the pertinent legislative acts and history, concludes:

Coming now to the tariff act of 1913 we observe that Schedule K omits the provision for duty upon raw wool, but in paragraph 286 thereof provides for "combed wool or tops and roving or roping made wholly or in part of wool or camel's hair, and on other wool and hair which have been advanced in any manner or by any process of manufacture beyond the washed or scoured condition, not specially provided for." This is followed in succeeding paragraphs by provisions for various rates of duty upon divers manufactures of wool, with a declaration in paragraph 304, above quoted, that the word "wool" when used in connection with a manufactured article of which it is a component material "shall be held to include wool or hair of the sheep, camel, or other like animals, whether manufactured by the woolen, worsted, felt, or any other process."   This omission of the words "goat, alpaca" found in the predecessor paragraph and the other changes in phraseology at once suggests that for duty purposes the word "wool" as used in Schedule K does not include the hair of the Angora goat, alpaca, and other like animals.   By no other construction can full force be given to this deliberate congressional omission, and that it was so intended is entirely obvious from the provisions in paragraphs 305 to 309, both inclusive, which immediately follow.

On the merits I am quite ready to concede and assert that the Congress has from time immemorial and in this act observed as distinct tariff classifications the wool of the sheep and the hair of the camel,

alpaca, etc. But it does not follow that because it has so regarded that paragraph 304 defining the word "wool" as used in paragraph 290 does not by its express terms include both classes of imports. That observance did not divest Congress of the power to declare, as it has in paragraph 290, that the use of the word "wool" should include both.

It was equally within the power of Congress, by paragraphs 305 to 309, inclusive, to legislatively segregate from the materials and articles declared in paragraph 304 to be included in the term "wool" by confining the legislation in these paragraphs to that class of wools as defined in paragraph 304, more commonly known as the "hair" of the Angora goat, alpaca, and other like (hair) animals, thereby intending to construe and constitute said paragraphs 305 to 309 the exclusive legislative code more specifically providing duties upon the raw materials and manufactures of those wools which are "hairs of the Angora goat, alpaca, and animals of like hairs."

In the earlier decision the court adopted the view that the force of the words of "other *like* animals" in that paragraph included therewithin the hair of the alpaca. While the opinion before us holds that only "wool" of the "sheep" is included in paragraph 304, the very terms of the paragraph are extended by Congress not only to the "wool" of the sheep but to the "wool *or hair* of the sheep, *camel*, or other *like* animals." While Congress dropped from the paragraph as it appeared in the act of 1909 part of its lengthy enumeration of hair-growing animals, "goat" and "alpaca," nevertheless it inserted the word "like," thereby in shorter form, but expressly predicating the paragraph not only of the "wool of the sheep" but also of the "*hair* of the *camel*, and other *like* animals."

From my limited point of view the purpose of Congress in this schedule in its differentiation between the wool of the sheep and the hair of the Angora goat, alpaca, and like animals for dutiable purposes is unmistakable. It seems to me that from paragraph 286 to 304, inclusive, Congress legislated with reference to manufactures, as stated in paragraph 304, including those made of the wool of the sheep and the hair of the camel, Angora goat, alpaca, and other like animals. In paragraphs 305 to 308, however, Congress differentiated for dutiable purposes both wool from hair as raw materials and manufactures thereof, confining the legislation expressly to the hair of the Angora goat and alpaca. These four paragraphs, to my mind, are intended to be complete and exhaustive as to the subject matter of the hair of the Angora goat and alpaca and manufactures thereof. Bearing in mind that while Congress ever has distinguished between these as tariff subjects when it came to placing duty thereupon, Congress was careful in paragraph 304 to include both the wool of the sheep and the hair of the camel and other like animals. When,

however, it proceeded in paragraphs 305, 306, 307, and 308, it confined itself to the differentiated subjects "hair of the Angora goat, alpaca, and other like animals." What like animals? Not like animals to the sheep, but like animals to the Angora goat and alpaca alone. In paragraph 304, however, it relates the legislation to the wool of the sheep and the hair of the camel and other like animals to all of these. While the result is the same, I think the differentiation more clearly follows the purpose of Congress and does not destroy the relation of the whole schedule to other paragraphs of the tariff act.

I concur in the conclusion.