(C. D. 981)

PROCTER & GAMBLE MANUFACTURING CO. *v.* UNITED STATES

## United States Customs Court, First Division

▮

▮

(Decided February 13, 1946)

*Benjamin A. Levett* (*Meyer Ohlbaum* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the defendant.

Before OLIVER, COLE, and EKWALL, Judges

OLIVER, Presiding Judge: This suit involves an importation which was entered as citronella oil free of duty under the *eo nomine* provision therefor in paragraph 1731 of the Tariff Act of 1930. It was classified as a mixture or combination containing essential or distilled oils under the provisions of paragraph 60, as modified by the trade agreement with France (T. D. 48316), and assessed with duty at the rate of 40 cents per pound and 30 per centum ad valorem. The competing paragraphs, insofar as pertinent, read as follows:

PAR. 1731. Oils, distilled or essential: * * * citronella * * *

PAR. 60. Perfume materials: * * * All mixtures or combinations containing essential or distilled oils, or natural or synthetic odoriferous or aromatic substances, not containing more than 10 per centum of alcohol.

The record establishes that the imported merchandise is citronella oil containing an average of about 8 per centum distillate of petroleum (kerosene) which had been intentionally added prior to shipment. This particular shipment consisted of approximately 10 tons, being part delivery of a contract order for 20 tons. The quantity of petroleum distillate in the various drums in which the oil was shipped varied from 6 to 13.6 per centum (exhibit 3, R. 18).

It appears that citronella oil is distilled from certain grasses grown in India, Ceylon, and Java and that at least two qualities of Ceylon citronella oil are recognized in the trade. One is known as Estate oil and the other as F. A. Q., these initials indicating "Fair Average Quality" (R. 77, 170).

It is not disputed that the imported merchandise was ordered as citronella oil, invoiced as citronella oil, accepted by the purchaser as a good delivery for citronella oil, and was used by plaintiff in its formulas as citronella oil.

The issue before us is whether citronella oil diluted or adulterated by the addition of a quantity of petroleum distillate has so far lost its identity for tariff purposes as to be no longer free of duty as citronella oil.

Plaintiff, a large manufacturer of soaps, introduced the testimony of 12 witnesses. One was the buyer of essential oils for the plaintiff corporation. One was the Government chemist who analyzed a sample from each of the 32 drums involved and reported the content

of petroleum distillate in each sample. Two were fully qualified technicians connected with the plaintiff corporation, who testified that this merchandise was citronella oil and was so accepted by them, that it was used by their company in the manufacture of certain grades of soaps, such as laundry and other soaps for general household use, not to impart an odor or perfume to the product but as a deodorant to kill the offensive odors of the fats and other component materials in these soaps; that only minute quantities, ranging from 0.02 to 0.12 or 0.2 per centum of this oil, were required to affect a whole batch of soap (R. 68, 109), and that their formulas for their soaps were prepared in their laboratories and sent out to their various plants to control production; that the present shipment was used, despite its petroleum distillate content, in the same proportions as indicated in their standard formula, and that no greater quantities were used because of the presence of the distillate.

In addition, the plaintiff introduced the testimony of several trade witnesses having experience with this product.

One of these witnesses, a chemist of long experience who had been analyzing citronella oil since 1921, not only from Ceylon but from Java and other sources as well, estimated that he had analyzed from 500 to 1,000 samples submitted by importers or purchasers. He stated that examinations of Ceylon oils for the past 20 years have generally disclosed the presence of petroleum distillate in varying quantities (R. 38).

Another of these witnesses, the president of a large company dealing in essential oils, testified he had been buying and selling Ceylon citronella oil for 35 years, coming in contact with the trade throughout the country. He stated that there is always a certain amount of petroleum distillate in the so-called pure oil from Ceylon and that he had never known of any importation of Ceylon citronella oil that was absolutely pure; that it always contained an adulterant, and that this was usually understood in the trade (R. 204, 205).

The testimony of the other trade witnesses was to the same effect. They all testified that some petroleum distillate as an adulterant was usually present and was expected in Ceylon citronella oil, but their opinions varied as to how high the percentage could go before they would consider the product unacceptable as a good delivery of citronella oil. They all agreed, however, that Ceylon citronella oil containing 8 to 8½ per centum of petroleum distillate would be considered and accepted in the trade as citronella oil, some stating that oil containing as high as 13½ per centum would still be considered and accepted in the trade as citronella oil (R. 187), although of inferior quality (R. 217). As one witness expressed it, more attention was paid to the "odor than to the technical analysis" (R. 200).

The field covered by the testimony of the numerous witnesses pro-

duced by the plaintiff as to their purchase or sale of citronella oil constituted collectively the entire United States. The testimony given by these witnesses indicated that everywhere throughout the country at the time of the passage of the tariff act, the term "citronella oil" had a uniform, definite, and general trade understanding which embraced such citronella oil adulterated with petroleum distillate, even in some instances to a degree greater than that here before us.

Plaintiff's claim is that the imported merchandise is commercially known and accepted in the trade and commerce of the United States as citronella oil; that it is a physical and not a chemical mixture, and that the presence of the petroleum distillate has not changed its name or use as citronella oil. Plaintiff further contends that under no circumstances can the classification under paragraph 60 be sustained, since that paragraph applies only to perfume materials and the record establishes that this citronella oil is not a perfume material; that should its claim under paragraph 1731 be denied, then it must fall under the provisions of paragraph 1558 as an unenumerated manufactured article.

The Government contends that the imported merchandise is a combination or mixture containing essential or distilled oils and is a perfume material dutiable as assessed under the provisions of paragraph 60. It is further contended that plaintiff has failed to establish a commercial meaning for citronella oil different from the common meaning and has failed to establish that oil such as here imported is commercially known as citronella oil; that since the imported merchandise is not a pure product but has been intentionally diluted or adulterated, it is not entitled to entry free of duty as citronella oil.

The latest expression of our appellate court on this general subject is *United States* v. *Dreyer*, 28 C. C. P. A. 325, C. A. D 162. The merchandise there before the court was claimed to be origanum oil. It contained a small quantity (one-fourth to one-half of 1 per centum) of orthocresol, a product not normally found in pure or natural origanum oil. The court there (Garrett, P. J., dissenting) reversed the trial court which had sustained the protest and held that the appellee had failed to prove that the imported product was not a mixture under paragraph 60 as classified by the collector.

There the issue was whether or not the imported oil was the pure product of the origanum plant or was a synthetic product, or a combination of both. In the present case there is no such issue presented. It is conceded that the imported merchandise is citronella oil to which has been added petroleum distillate, a product not present in pure citronella oil.

The decision in the *Dreyer* case, *supra*, is not controlling in the present case. We do not understand that it was the intention of our appellate court in that case to lay down the rule that if any substance

not normally present is added or found in any essential or distilled oil named in paragraph 1731 that such oil is thereby removed from the *eo nomine* provisions of that paragraph and rendered dutiable under the mixture provisions of paragraph 60.

Plaintiff's testimony that Ceylon citronella oil is used solely as a deodorant and not as a perfume material is not refuted. Defendant's sole testimony on this point is that of a witness from the well-known perfume firm of Coty & Co. He testified that in his opinion Ceylon citronella oil *could* be used as a perfume material, although his firm had never so used it, and he did not know of any other perfume concern that used it (R. 224–227).

. The mixture or combination of which essential or distilled oils are a part, referred to in paragraph 60, contemplates only distilled oils which are perfume materials. In *United States* v. *American Shipping Co.*, 13 Ct. Cust. Appls. 346, T. D. 41254, the court said, referring to the corresponding paragraph of the Tariff Act of 1922 (p. 348):

> Paragraph 61 is a combination of two or more paragraphs in the Tariff Act of 1913, but we see nothing in the history of the legislation, or in the circumstances surrounding its enactment, which would indicate that Congress meant to include within the paragraph mixtures or combinations containing essential or distilled oils which were not used in the manufacture of perfumery.
>
> We think Congress meant to include all mixtures or combinations containing essential or distilled oils used in the making of perfumery and to exclude those which were not so used.
>
> That this paragraph should have this interpretation is abundantly supported by the decisions of this and other courts, among them being *Crimmins & Pierce* v. *United States*, 6 Ct. Cust. Appls. 137 * * *.

However, in view of the conclusion we have reached in this case, we are not called upon to decide whether or not the imported merchandise is a perfume material within the meaning of paragraph 60.

The Government did not challenge the evidence given by plaintiff's trade witnesses, although the record (exhibit 2, R. 305) discloses that the Government was in contact with numerous concerns in the essential oil field prior to the trial. No evidence on this point was introduced by the defendant. The defendant, however, did introduce the testimony of two Government chemists, an assistant appraiser who from 1921 to 1941 passed on essential oils, and the chief liquidator of the collector's office, in an attempt to establish long-continued practice with respect to classification of merchandise similar to that at bar (R. 277).

One of the chemists testified that he had been connected with the Customs Laboratory for 14 years and had examined most of the essential and practically all of the citronella oils that were imported during that time (R. 209). He estimated that he had examined two or three hundred samples of Ceylon citronella oil (R. 238) and that while it was a simple matter to detect the presence of petroleum distillate there were only two instances where such distillate was found (R.

239). The other chemist testified that from 1926 to 1929 he had analyzed samples of oils (R. 282), including citronella, and that during that period he tested nine samples (R. 286) and found petroleum distillate in one. The record does not identify these three shipments, nor is it made clear that in these three instances they were returned as other than citronella oil containing petroleum distillate. The Government chemists' reports (exhibits 1 and 3) refer to this merchandise now before us as *citronella oil*, containing petroleum distillate. The substance of their testimony was that *if* they found petroleum distillate present in citronella oil they would *report* it as a combination or mixture.

We are of opinion that the testimony adduced by plaintiff in the present record has fairly established that the imported merchandise in the condition in which imported, containing this added petroleum distillate, was generally and uniformly known in the trade and commerce of the United States, and was bought and sold and used as citronella oil, and that this condition existed at and prior to the passage of the Tariff Act of 1930.

As to proof of commercial designation, our appellate court in *Stephen Rug Mills* v. *United States*, 32 C. C. P. A. 110, C. A. D. 293, after reviewing the cases, said (p. 115):

\* \* \* In none of the cases involving commercial designation have we been able to find a holding that it is necessary for a witness to state in so many words that commercial designation differs from common meaning. All that it is necessary to show is that the proof of commercial meaning is sufficient to take the involved goods out of the common meaning of the term used in the statute.

That the trade recognizes and accepts Ceylon citronella oil with a percentage of petroleum distillate added as a good delivery for citronella oil is further supported by the literature and the report of the Tariff Commission on the subject.

In Report No. A–12 of the Tariff Information Surveys, referring to the articles in paragraph 46˙of the Tariff Act of 1913 (predecessor provision of paragraph 1731), published by the Tariff Commission in 1921 and which was available to Congress prior to the passage of the Tariff Act of 1930, there is given the following general information on citronella oil (p. 33):

\* \* \* The inferior quality of the Ceylon oil is due to some extent at least to the consistent practice of adulteration. Prior to the last few years, pure Ceylon citronella oil was seldom sold. The principal adulterants are petroleum, fatty oils, and benzine or motor spirits.

Thorpe's Dictionary of Applied Chemistry, fourth edition (1939), volume III, in discussing Ceylon citronella oil states (p. 191): "Such oils may contain 10 to 15 percent of petroleum."

Allen's Commercial Organic Analysis, volume IV, published in 1911, states (p. 306):

Citronella oil is * * * frequently adulterated. Petroleum (kerosene) is much employed, and fixed oils are sometimes added.

The following appears in The Volatile Oils, by Gildemeister and Hoffman, second edition, volume II, published in 1916, under the heading "Ceylon citronella oil" (p. 234):

In the case of citronella oil, petroleum has been a favorite adulterant.

Ernest J. Parry states in The Chemistry of Essential Oils and Artificial Perfumes, fourth edition (1921), volume I (p. 64), that Ceylon citronella oil is "almost universally adulterated," and further (p. 65):

The trade in citronella oil is in a very unsatisfactory condition, as practically all the oil exported from Ceylon is, by consent, adulterated, the amount of pure oil sold being almost negligible.

In Parry's Cyclopaedia of Perfumery, published by J. & A. Churchill (London, 1925), the following appears (vol. I, p. 146):

* * * Practically all the Ceylon citronella oil that is dealt in commercially is adulterated with a small quantity of kerosene, although a pure grade is obtainable under the description of "Estate Oil."

At page 49 various tables are set forth giving the specific gravity, rotation, and refractive index of various citronella oils, listed as "Pure Citronella Oils," "Citronella Oils Mixed with Adulterants," and "Adulterated Citronella Oils on the Market."

We are of opinion that the Congress, having the information before it that citronella oil from Ceylon usually contained, and was expected to contain, adulterants such as petroleum, intended the provision in paragraph 1731 to cover such citronella oil.

On this entire record we find the merchandise here before us to be citronella oil. The protest is therefore sustained and the merchandise held free of duty under the *eo nomine* provision for citronella oil in paragraph 1731.

Judgment will issue accordingly.