ATLAS EXPORT Co., F. L. KRAEMER & Co. *v.* UNITED STATES (No. 4859)[1]

United States Court of Customs and Patent Appeals, May 15, 1956

[1] C. A. D. 618.

*Sharretts, Paley & Carter* (*Richard F. Weeks, Howard Clare Carter*, and *Joseph F. Donohue* of counsel) for appellant.

*Warren E. Burger*, Assistant Attorney General, and *Richard E. FitzGibbon*, Chief, Customs Section, for the United States.

[Oral argument April 12, 1956, by Mr. Donohue and Mr. FitzGibbon]

Before JOHNSON, Acting Chief Judge, and WORLEY, COLE, and JACKSON (retired), Associate Judges

COLE, Judge, delivered the opinion of the court:

The sole question to be decided in this case, as stated in appellants' brief, is whether the imported merchandise (certain square and circular pieces of onyx) "is onyx wholly or partially manufactured, or is slabs, polished, containing not less than four superficial inches."

The merchandise in this case was exported from Mexico, and was described by the lower court as "certain square and circular pieces of onyx that are polished on one flat side and on all the edges. All of the pieces in question are approximately seven-eighths of 1 inch in thickness, and either 3½, 6 or 8 inches square, or 5, 6, or 8 inches in diameter. Each piece has a hole drilled in the center."

The merchandise was assessed with duty at the rate of 50% ad valorem under the provisions of paragraph 232 (d) of the Tariff Act of 1930 as "onyx, wholly or partly manufactured into monuments, benches, vases, and other articles * * * not specially provided for." Importers protested the classification, claiming that the merchandise was properly dutiable at the combined rate of 14¢ per superficial foot under paragraph 232 (b). The United States Customs Court, First Division, Abs. 59303, one judge dissenting, sustained the decision of the collector, and the importers appeal to this court.

Paragraph 232 of the Tariff Act of 1930 provides in full as follows:

(a) Marble, breccia, and onyx, in block, rough or squared only, 65 cents per cubic foot; marble, breccia, and onyx, sawed or dressed, over two inches in thickness, $1 per cubic foot.

(b) Slabs and paving tiles of marble, breccia, or onyx: Containing not less than four superficial inches, if not more than one inch in thickness, 8 cents per superficial foot; if more than one inch and not more than one and one-half inches in thickness, 10 cents per superficial foot; if more than one and one-half inches and not more than two inches in thickness, 13 cents per superficial foot; in addition thereto on all the foregoing, if rubbed in whole or in part, 3 cents per superficial foot, or if polished in whole or in part (whether or not rubbed), 6 cents per superficial foot.

(c) Mosaic cubes of marble, breccia, or onyx, not exceeding two cubic inches in size, if loose, one-fourth of 1 cent per pound and 20 per centum ad valorem; if attached to paper or other material, 5 cents per superficial foot and 35 per centum ad valorem.

(d) Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances

or any of them is the component material of chief value; not specially provided for, 50 per centum ad valorem.

There is little dispute as to the facts. But two witnesses testified, both in behalf of the importer, and their evidence was very brief. Samples of the imported articles were offered in evidence and were before this court during the oral argument. The court below summarized the testimony of the two witnesses as follows:

Their combined testimony establishes that the pieces of onyx in question are used in the manufacture of several different kinds of articles, i. e., lamps, clock cases, smoking stands, wall tiles, bookends, ashtrays, and that the hole in the center of each of the imported pieces not only advanced the merchandise toward an ultimate use but also is essential for the actual use thereof in any of the finished products where it may be finally employed.

It has been conceded by the parties hereto that, except for the hole drilled in the center of each piece, the merchandise in this case is substantially similar to that before this court in *Mutual Lamp Mfg. Co.* v. *United States*, 21 C. C. P. A. (Customs) 231, T. D. 46762.[1] In the *Mutual Lamp* case, this court ruled that square and disk-shaped pieces of onyx, polished on one face and the edges, were dutiable as "slabs" of onyx under paragraph 232 (b), *supra*. Thus, the only question here is whether the drilling of the hole in the center of each piece of onyx requires it to be classified under paragraph 232 (d) rather than under paragraph 232 (b).

The dissenting judge below emphasized that the wording used in paragraph 232 (d) was "onyx, wholly or partly manufactured *into monuments, benches, vases, and other articles*," [italics added by dissenting judge], and that the pieces as imported are not dedicated to any specific article, but can be used for any purpose. He was also of the opinion that the drilling of a hole in a slab would not remove it from the definition of a "slab." The basic objection of the dissenting judge was apparently his belief that nothing should be classified under paragraph 232 (d) unless it were dedicated to the production of some *specific* article.

The majority of the court below quoted several definitions [2] of the word "slab" and concluded that

---

[1] The exhibits used to illustrate the merchandise involved in the *Mutual Lamp* case actually had a hole in the center of each piece, but the record shows that the holes had been drilled after importation and were not considered in determining the dutiable status of the goods.

[2] The definitions as quoted by the lower court read as follows:

The Century Dictionary:

slab, *n.* * * * 3. In general, a piece of anything solid and compact, heavy, and thin in proportion to its length and breadth, but thick enough not to be pliable, especially when of considerable size.

Webster's New International Dictionary (1948):

slab, *n.* 1. A comparatively thick plate or slice of anything; as a *slab* of bread, marble, metal, wood, beef, etc.

Knight's American Mechanical Dictionary:

slab, * * * 2. A thin flat piece of stone or marble for a step, mantel, etc.

Funk & Wagnalls New Standard Dictionary (1942):

slab, *n.* * * * 2. A flat plate or piece, as of metal or of stone, having its surfaces plane; a thick plate; as, a *slab* of marble.

The significance of the foregoing definitions to the present issue lies in their consistency to the effect that a "slab" is a flat piece or plate that has not been processed or manipulated in any way. The present merchandise is not within that category.

The majority pointed out that the drilled hole is essential to any of the uses for which the merchandise has become adaptable, and therefore the drilling of the hole has brought each of the imported pieces to an "advanced stage in its development toward an ultimate or predestined product." The majority thought such a condition constituted a partial manufacture, citing *United States* v. *N. M. Albert Co., et al.*, 41 C. C. P. A. (Customs) 191, C. A. D. 549. The majority did not believe it to be essential that the imported merchandise be dedicated to the manufacture of any specific article or class of articles to be "partly manufactured" for tariff purposes, but that it was sufficient that it "shall have been processed to a point where it has a distinctive character different from that possessed by the original material." The majority of the court below was clearly correct in that conclusion.

Appellants have objected to the analysis of the meaning of the word "slab" made by the majority of the Customs Court. They argue that there is nothing in the definitions quoted by the lower court which states that a characteristic of a slab is that it "has not been processed or manipulated in any way."

There is some merit in appellants' argument. The definitions are merely silent on the question of manipulation or processing, and it might be argued that therefore neither manipulation or processing, nor lack of manipulation or processing, is an essential element of the definition of a "slab." On the other hand, it should be recognized that in ordinary speech the word "slab" generally does carry a connotation such as that ascribed to it by the lower court. Normally "slab" is used to describe an object only when there is no more precise or exact word to describe it; but that is not always the case, and a specific article, such as a tombstone, might also be called a slab. We will assume for purposes of this opinion that manipulation or processing does not necessarily prevent material from being termed "slabs." Appellants have recognized that one of the essential attributes of a "slab" is that it must be *solid*. It might well be argued that a piece of material with a hole in it is not solid, but for purposes of this opinion we shall assume that one small hole such as is drilled in the imported merchandise is not sufficient to take it out of the general category of "slabs."

Assuming, without deciding, therefore, that the imported merchandise might in some respects be termed "slabs," we turn to a consideration of the applicability of paragraph 232 (d). Is the imported merchandise "wholly or partly manufactured into * * * articles"? We are in agreement with the majority of the court below

in its holding that it is not necessary for merchandise to be dedicated to the manufacture of one specific article or class of articles to fall under paragraph 232 (d). A significant fact to be noted is that the drilling of the hole in these articles is apparently the last manufacturing step that is performed on them. In most of the uses described by the witnesses, the only thing that remains to be done to the articles is an assembling step. The fallacy of appellants' argument can readily be appreciated when it is realized that under their theory a completely manufactured article could be taken out of paragraph 232 (d) by the mere fact that it also could be processed further into different articles.

That it was not the intention of Congress to require any greater degree of "dedication" than is present here is shown by the *Summary of Tariff Information*, 1929. In discussing paragraph 233 of the Tariff Act of 1922 (the predecessor of paragraph 232 (d) of the Act of 1930), it is stated:

Manufactures of marble, breccia, and onyx, n. s. p. f., cover all manufactures of marble not provided for in paragraph 232; * * *. The remaining manufactures include, among other things, monuments, tombstones, table tops, drain boards, benches, urns, illuminating units for artificial lighting, *lamp bases*, ink wells, and many art and novelty pieces. [Emphasis added.]

It is clear that Congress intended to include under paragraph 232 (d) articles of the type imported here. If these articles are not lamp bases, they can certainly be said to be partly manufactured lamp bases, even though they may be usable for other purposes. As a matter of common sense, an article which is suitable for use as a lamp base will in the great majority of cases be suitable as a base for a variety of objects, including, as was testified in this case, smoking stands and trophies. It is also conceivable that an article in the appropriate size and shape and condition for use as a lamp base might also be adaptable for a different unrelated use. Many of the other items in the list quoted above would clearly also be adaptable to other uses. For example, a table top might be used as a "panel" or a shelf (see *Richard Shipping Corporation* v. *United States*, 17 C. C. P. A. (Customs) 417, 418, T. D. 43865), or a tombstone (if unengraved) might be made into a table top, or a drain board, or a bench. It is abundantly evident that "dedication" to a specific use is not essential to classification under paragraph 232 (d).

Appellant argues that even if the imported merchandise can be said to fall under both paragraph 232 (b) and paragraph 232 (d), that it should still be classified under 232 (b) because that provision is more specific than 232 (d). However, the intention of Congress must prevail over all other rules of construction, *Rosenberg & Co.* v. *United States*, 7 Ct. Cust. Appls. 213, T. D. 36510, and it is abundantly clear that some of the items which Congress considered to be covered by

paragraph 232 (d) might still be called "slabs" in the general meaning of that term. For example, it can hardly be denied that partly manufactured marble benches, specifically mentioned in paragraph 232 (d), would consist of "slabs." The same is true of the table tops, tombstones, and lamp bases, mentioned in the *Summary of Tariff Information*. Furthermore, this court in the *Richard Shipping Corporation* case, *supra*, held that merely polishing a slab was sufficient to bring it under the purview of paragraph 233 of the Tariff Act of 1922, the predecessor of paragraph 232 (d) of the Tariff Act of 1930. Although the decision in that case is no longer applicable to the step of polishing due to provision in the 1930 Act for "Slabs * * * polished" (see the *Mutual Lamp* case, *supra*), the case is still authority on the question of precedence between the competing provisions.

The case of *United States* v. *Guggenheim Bros. Dental Supply Co.*, 22 C. C. P. A. (Customs) 613, T. D. 47604, cited by appellants, may be distinguished on several grounds. In that case blocks of a cellulose material with two corners cut away, used for making plates for artificial dentures, were held not to be "made into finished or partly finished articles," even though it would have been necessary to cut the corners away in this country had it not been done before importation. In addition to the fact that somewhat different provisions were involved, there was no indication in that case of a Congressional intent as to the classification of items of the type there involved. It might also be noted that the processing step performed in that case was extremely minor as compared with the further processing necessary to finish the article, and that the blocks involved in that case did not appear to have been usable for *any* purpose without further processing. In this case, however, the pieces of onyx imported here apparently are in their final state of manufacture, and need only to be assembled in most of the uses described in the testimony.

The presence of the "n. s. p. f." provision in paragraph 232 (d) does not alter the fact that the imported merchandise is more specifically provided for in that paragraph than in paragraph 232 (b). *Drakenfeld & Co.* v. *United States*, 9 Ct. Cust. Appls. 124, T. D. 37979.

The judgment of the United States Customs Court must be *affirmed*.

Jackson, Judge, retired, recalled to participate.

O'Connell, J., because of illness, did not participate in the hearing or decision of this case.