BLOOMINGDALE BROS. *v.* UNITED STATES (No. 1787).[1]

1. CONSTRUCTION, PARAGRAPHS 348, 304, AND 307, TARIFF ACT OF 1913—"FUR"— "HAIR"—"WOOL."

Hair which is so short that it is commercially unfit to be spun into yarn or for the making of textiles, and is chiefly employed in the making of furs or fur garments, or for other fur uses, is that kind of hair which is known as fur, though it be taken from the back of a sheep. Hair which possesses all the characteristics of fur, but is so long and of such quality that it can be spun into yarn and converted into cloth

----

[1] T. D. 37221 (32 Treas. Dec., 616).

and is chiefly used for that purpose, should be classified as a wool or as hair other than fur.

2. CONSTRUCTION, PARAGRAPHS 304 AND 307, TARIFF ACT OF 1913—"OTHER LIKE ANIMALS."

The expression "other like animals," used in paragraphs 304 and 307, tariff act of 1913, with reference to wool and hair regards similarity in the hair, and not in the animals themselves.—Crimmins v. United States (6 Ct. Cust. Appls., 137; T. D. 35392).

3. ANGORA RABBIT HAIR.

The hair of the Angora rabbit resembles that of the Angora goat or alpaca more nearly than it does that of the sheep or camel.

4. YARN NOT A MANUFACTURE OF FUR.

The making of yarns is not, properly speaking, a fur use; and a yarn made of hair can not be a manufacture of fur.

5. ANGORA RABBIT HAIR YARN.

Yarn made of the hair of the Angora rabbit, commercially known as Angora wool yarn, is not dutiable as a manufacture of fur (par. 348, tariff act of 1913). It is more specifically described by paragraph 307 ("yarns made of the hair of the Angora goat, alpaca, and other like animals") than by the definition of "wool" in paragraph 304 ("wool or hair of the sheep, camel, or other like animals") and is dutiable accordingly.

United States Court of Customs Appeals, May 14, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7964 (T. D. 36698). [Reversed.]

Comstock & Washburn (Albert H. Washburn and Geo. J. Puckhafer of counsel) for appellants.

Bert Hanson, Assistant Attorney General (Thomas J. Doherty, special attorney, of counsel), for the United States.

[Oral argument February 14, 1917, by Mr. Washburn and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Yarn made from the hair of the Angora rabbit, imported at the port of New York, was classified by the collector of customs as a manufacture of fur and assessed for duty at 40 per cent ad valorem under the provisions of paragraph 348 of the tariff act of 1913, which paragraph, in so far as pertinent, reads as follows:

348. * * * Manufactures of furs, further advanced than dressing and dyeing, when prepared for use as material, joined or sewed together, including plates, linings, and crosses, except plates and mats of dog and goat skins, and articles manufactured from fur not specially provided for in this section, 40 per centum ad valorem; * * *.

The importers claimed, among other things, that the merchandise was yarn made of the hair of the Angora goat, alpaca, or other like animals, and that therefore the goods were dutiable at 25 per cent ad valorem under the provisions of paragraph 307, which reads as follows:

307. Yarns made of the hair of the Angora goat, alpaca, and other like animals, 25 per centum ad valorem.

The Board of General Appraisers overruled the protest and the importers appealed.

According to the return of the appraiser and the testimony in the case, the merchandise in question is commercially and commonly known as Angora wool yarn and is made from the soft, silky, downy, and somewhat curly hair which twice a year is plucked or pulled in France from the back of the Angora rabbit. The Angora rabbit, as its name indicates, is indigenous to the mountainous vilayet of Angora, in Asia Minor, many of the animals of which, especially the goats, dogs, rabbits, cats, rats, and mice, are characterized by a growth of long, silky hair. The evidence discloses without contradiction that the rabbits are never killed for their pelts, and that the chief, if not the exclusive, use of the hair, which is removed semiannually, is that of making yarn for the manufacture of wearing apparel for babies.

In its strict sense, fur is the soft, silky, curly, downy, and longitudinally barbed filament which, mixed with a hair that is straight and smooth, and comparatively long, coarse, and rigid, constitutes the pelage of certain animals native to the colder climates. (See ''Fur,'' Encyclopedia Britannica.) A true fur does not differ materially from a true wool, which, like fur, is a modified form of hair and is distinguished by its fine, soft, and curly nature and by pointed scales or plates attached to the filament. (See ''Wool, Characteristics of,'' New International Encyclopedia.) Indeed, fur and wool, when separated from the skin, are substantially of the same nature and have no marked points of difference, with the exception, perhaps, that wool, as a usual rule, is of a longer staple than fur. Whether the modified hair, possessing the characteristics common to fur and wool, should be denominated as fur rather than wool or as wool rather than fur depends, in our opinion, largely if not entirely, on the uses for which such hair is best adapted and the purposes to which it is chiefly devoted. If the hair is so short that it is commercially unfit to be spun into yarn or for the making of textiles, and is chiefly employed in the making of furs or fur garments, or for other fur uses, it is that kind of hair which is known as fur, though it be taken from the back of a sheep. If, on the other hand, the hair possesses all the characteristics of fur, but is so long and of such quality that it can be spun into yarn and converted into cloth and is chiefly used for that purpose, it should be classified as a wool or as hair other than fur. As the hair of the Angora rabbit is chiefly, if not exclusively, used for the making of yarns, and as the making of yarns is not, properly speaking, a fur use, we think it may be safely concluded that the material out of which the importation was made is not fur and the merchandise in issue must therefore be regarded as a manufacture of some other kind of hair.

The Government, however, makes the point of long-continued practice under a decision made by the board in 1891, in which it was held that yarns made of fur were classifiable as manufactures of fur, notwithstanding the fact that paragraph 391 of the tariff act of 1890 made special provision for woolen and worsted yarns made wholly or in part of wool, worsted, the hair of the camel, goat, alpaca, or *other animals.* We do not think that the point is well taken, inasmuch as the board in that case found that the covering on a rabbit skin was commonly and commercially known as fur. In this case no commercial designation has been shown, and whatever may have been the common designation of the covering of rabbit skin in 1891, we are quite certain that at the time of this importation hair of the Angora rabbit separated from the skin and used chiefly or exclusively for the making of yarns, and which has no fur use, is not commonly known as fur. Indeed, the fact that the yarn made of the hair of the Angora rabbit is commonly and commercially known as Angora wool yarn rather makes for the proposition that the hair of which the yarn is made can not be commonly known as fur.

Hair of the Angora rabbit separated from the skin and chiefly or exclusively used for the making of yarn designed to be woven into cloth might well have been classified, we think, as wool under the tariff acts of 1897 and 1909, which expressly provided that the term "wool," when used in connection with a manufactured article, should be held to include wool or hair of the sheep, camel, alpaca, *or other animal.* (Act of 1897, par. 383; act of 1909, par. 395.) The goods under consideration were, however, imported under the tariff act of 1913, which provides in paragraph 304 that the word "wool" when used in connection with a manufactured article shall include wool or hair of the sheep, camel, or other *like* animals, and makes specific provision in paragraph 305 for hair of the Angora goat, alpaca, and other *like* animals. Because of that definition of wool, and because the hair of the goat and alpaca is separately provided for, the question immediately arises as to whether the hair of the Angora rabbit, which is not fur, as we have found, is the hair of an animal like the sheep or camel or of an animal like the Angora goat or alpaca.

Physically the Angora rabbit, a rodent, differs very materially from the sheep, the camel, the goat, and the alpaca, which are ruminants, and if physical resemblance is to be determinative of the tariff status of the goods it is evident that whatever else it may be the hair of the Angora rabbit can not be classified either as wool or as claimed by the importers. Inasmuch, however, as paragraphs 304 and 305 provide that the hairy covering of the animals and not the animals themselves shall be subject to the duty prescribed, we think that Congress was more concerned with the nature and character of

the hair produced by them than with their build or physical structure. Indeed, the fact that the sheep bears but little if any physical resemblance to the camel, and the Angora goat but little if any to the alpaca, coupled with the fact that there is a greater physical resemblance between the goat and sheep than there is between the sheep and camel, and a greater physical resemblance between the alpaca, a cameloid animal, and the camel than there is between the goat and the alpaca, indicates very decidedly that Congress did not intend that the tariff status of the hair of those animals should be determined by their physical resemblance. The manifest purpose of paragraphs 304, 305, and 307 was to subject materials of the same or a similar kind to the same rate of duty, and when Congress used the expression "like animals" it did not mean animals alike in physical structure and organization, but animals which produced a like wool or hair, the material with which Congress was dealing. Moreover, whether classification under paragraphs 305 and 307 should be determined by similarity of material or similarity of the animals which produced it seems to have been definitely settled by this court in Crimmins v. United States (6 Ct. Cust. Appls., 137; T. D. 35392), in which case De Vries, Judge, speaking for the court, took occasion to say that the purpose of paragraph 304 was to subject to the same duty the same or similar materials, and the term "like animals" as there used did not mean animals alike in physical build or appearance, but alike in the wool or hair which they produced. What was there said of paragraph 304 can be said with equal force of paragraphs 305 and 307.

Having found that similarity of the hair produced and not similarity in the form or appearance of the animals producing it was intended to control classification under paragraphs 304, 305, and 307, we are next brought to the consideration of whether the hair of the Angora rabbit more nearly resembles that of the sheep and the camel than that of the Angora goat or alpaca. In our opinion, the evidence satisfactorily establishes that the hair of the Angora rabbit has all the characteristics which mark the hair of animals native to the vilayet of Angora, and as the Angora goat is one of those animals, we think we may say with confidence that the hair of the Angora rabbit more nearly resembles the hair of the Angora goat than it does the hair or wool of the sheep or camel. We therefore conclude that yarns made of the hair of the Angora rabbit are yarns made of hair like to that of the Angora goat, and that the yarns which are the subject of protest are dutiable under paragraph 307 at 25 per cent ad valorem, as claimed by the importers.

The decision of the Board of General Appraisers is *reversed*.