FURIDA, INC. *v.* UNITED STATES (No. 3767)[1]

United States Court of Customs and Patent Appeals, November 5, 1934

*B. A. Levett* for appellant.

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Marcus Higginbotham, Jr.,* special attorney, of counsel) for the United States.

[Oral argument October 9, 1934, by Mr. Levett and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Certain yarn valued at more than $1.50 per pound, composed wholly or in chief value of hair of the Angora rabbit, was imported, by appellant, at the port of New York, and returned for duty at 40 cents per pound and 50 per centum ad valorem under paragraphs 1107 and 1121 of the Tariff Act of 1930. These paragraphs are as follows:

PAR. 1107. Yarn, wholly or in chief value of wool, valued at not more than $1 per pound, 40 cents per pound and 35 per centum ad valorem; valued at more than $1 but not more than $1.50 per pound, 40 cents per pound and 45 per centum

---

[1] T. D. 47361.

ad valorem; valued at more than $1.50 per pound, 40 cents per pound and 50 per centum ad valorem.

PAR. 1121. Whenever in this title the word "wool" is used in connection with a manufactured article of which it is a component material, it shall be held to include wool or hair of the sheep, camel, Angora goat, Cashmere goat, alpaca, or other like animals, whether manufactured by the woolen, worsted, felt, or any other process.

The importer protested, claiming the goods to be dutiable at 40 per centum or 35 per centum ad valorem under paragraph 1519 (b) or, alternatively, at 50 per centum ad valorem under paragraph 1519 (e) of said act. These two subparagraphs are as follows:

PAR. 1519. (b) Manufactures of fur (except silver or black fox), further advanced than dressing, prepared for use as material (whether or not joined or sewed together) including plates, mats, linings, strips, and crosses (except plates, mats, linings, strips, and crosses of dog, goat, and kid skins), if not dyed, 35 per centum ad valorem; if dyed, 40 per centum ad valorem.

(e) Articles, wholly or partly manufactured (including fur collars, fur cuffs, and fur trimmings), wholly or in chief value of fur, not specially provided for, 50 per centum ad valorem.

The trial court overruled the protest under the doctrine announced in *Bloomingdale Bros.* v. *United States*, 8 Ct. Cust. Appls. 104, T. D. 37221, and the importer has appealed.

The claims made by the importer here are that the component of chief value in the imported yarn is not the hair of the Angora rabbit, but is the fur of that animal; that if the fiber used in the manufacture of the imported yarn is not similar to the wool or hair of the sheep, camel, Angora goat, Cashmere goat, or alpaca, and is, in fact, fur, the yarn was improperly classified and should have been classified as a manufacture, or articles in chief value of fur.

On the trial in the court below, an attempt to prove a commercial designation, by means of which commercial designation the imported material might be taken out of the purview of paragraphs 1107 and 1121, was made, but, as we view it, unsuccessfully. The testimony offered was more to the point, that, as a matter of fact, the Angora rabbit fibers which were used in manufacturing the imported yarn were not like those in the wool or hair of the sheep, camel, Angora goat, Cashmere goat, and alpaca, and therefore ought not to be included within the designation "wool", as used in said paragraph 1107, by virtue of said paragraph 1121.

To sustain this theory, the importer called and examined at length several witnesses, but, particularly, Max Bachrach, a fur consultant, who explained his business in the following language:

The work I do as fur consultant comprises the analysis of fur-trade problems, the analysis of manufacturing methods, various dyeing and other methods that are used in the handling of fur, and any problems that may come up in the question of deciding what is fur and what is not fur; and where an identification is necessary, that we can give the proper method of identification.

This witness testified that he had examined samples of the fibers taken from this material which were from the Angora rabbit, and had compared the same, microscopically, with hair from the camel, sheep, and other like animals, and offered photographs of microscopic enlargements of these various hairs or fibers for the examination of the trial court. The distinction which this witness made, as a result of his examination, between the Angora rabbit fibers and hairs of the other animals mentioned, was that the rabbit fibers contained a series of air cells on the inside of the fiber, which air cells, it is stated, retain the humidity of the outside atmosphere and permit "in the animal and in the finished product a warmth to be given by holding the circulation of the body, the circulatory warmth of the body, in, and keeping the cold out." This witness also testified that the scales on the outside of the hairs of the Angora rabbit, and those on the hair of the sheep, camel, and other similar animals, were differently formed; that, on account of the formation of these hairs or fibers of the Angora rabbit, they would felt more readily than the hair of the sheep and other like animals, and that Angora rabbits, therefore, were inherently different and not "like animals", as defined in said paragraph 1121.

It also appears from the record that the characteristics of the Angora-rabbit fibers used in this material are common to the fur-bearing animals. It appears that wool hair or fibers contain similar air spaces, but much less in number than what the witness designated as the true fur-bearing animals.

The trial court was of opinion that the case came within the facts and decision in *Bloomingdale Bros.* v. *United States*, *supra*, and that the importer had not introduced sufficient evidence to take the case out of the doctrine therein announced. We find ourselves in agreement with the conclusion of the trial court in this respect:

In the *Bloomingdale* case, yarn made from the hair of the Angora rabbit was involved, substantially identical with that here involved. The trial court, in the instant case, quotes a portion of our opinion in the *Bloomingdale* case, and, as it is particularly applicable to the issue here, we repeat it:

In its strict sense, fur is the soft, silky, curly, downy, and longitudinally barbed filament which, mixed with a hair that is straight and smooth, and comparatively long, coarse, and rigid, constitutes the pelage of certain animals native to the colder climates. (See "Fur", Encyclopedia Britannica.) A true fur does not differ materially from a true wool, which, like fur, is a modified form of hair and is distinguished by its fine, soft, and curly nature and by pointed scales or plates attached to the filament. (See "Wool, Characteristics of", New International Encyclopedia.) Indeed, fur and wool, when separated from the skin, are substantially of the same nature and have no marked points of difference, with the exception, perhaps, that wool, as a usual rule, is of a longer staple than fur. Whether the modified hair, possessing the characteristics common to fur and wool,

should be denominated as fur rather than wool or as wool rather than fur depends, in our opinion, largely if not entirely, on the uses for which such hair is best adapted and the purposes to which it is chiefly devoted.  If the hair is so short that it is commercially unfit to be spun into yarn or for the making of textiles, and is chiefly employed in the making of furs or fur garments, or for other fur uses, it is that kind of hair which is known as fur, though it be taken from the back of a sheep.  If, on the other hand, the hair possesses all the characteristics of fur, but is so long and of such quality that it can be spun into yarn and converted into cloth and is chiefly used for that purpose, it should be classified as a wool or as hair other than fur.  As the hair of the Angora rabbit is chiefly, if not exclusively, used for the making of yarns, and as the making of yarns is not, properly speaking, a fur use, we think it may be safely concluded that the material out of which the importation was made is not fur and the merchandise in issue must therefore be regarded as a manufacture of some other kind of hair.

The Government, however, makes the point of long-continued practice under a decision made by the board in 1891, in which it was held that yarns made of fur were classifiable as manufactures of fur, notwithstanding the fact that paragraph 391 of the tariff act of 1890 made special provision for woolen and worsted yarns made wholly or in part of wool, worsted, the hair of the camel, goat, alpaca, or *other animals*.  We do not think that the point is well taken, inasmuch as the board in that case found that the covering on a rabbit skin was commonly and commercially known as fur.  In this case no commercial designation has been shown, and whatever may have been the common designation of the covering of rabbit skin in 1891, we are quite certain that at the time of this importation hair of the Angora rabbit separated from the skin and used chiefly or exclusively for the making of yarns, and which has no fur use, is not commonly known as fur. Indeed, the fact that the yarn made of the hair of the Angora rabbit is commonly and commercially known as Angora wool yarn rather makes for the proposition that the hair of which the yarn is made can not be commonly known as fur.

Following this excerpt, this court called attention in the *Bloomingdale* case to the fact that the decision was under the Tariff Act of October 3, 1913, which provided, for the first time, in paragraph 304 of that act, the predecessor of the present paragraph 1121, that "wool" should include wool or hair of the sheep, camel, or other *like* animals. We further held that although the Angora rabbit was not physically like the sheep, camel, and other animals of that class, the words "like animals" must be held to mean animals which produced "a like wool or hair."

The decision in the *Bloomingdale* case was made on May 14, 1917— 17 years ago.  From that time to the present, the practice has been uniformly, at least at the port of New York, to classify yarns made of Angora rabbit hair as wool yarn.  In the absence of proof to the contrary, it will be presumed that customs officials generally accepted and acted upon the authority of the decision of this court in the *Bloomingdale* case, which decision has never been reversed or modified by this court, or by the Supreme Court of the United States.

It may be that if the showing made in the trial court in this case had been made at the hearing in the *Bloomingdale* case, this court might have come to a different conclusion, but after a continuous administrative practice for 17 years, and after the enactment of two

complete revisions of the customs laws of the country, namely, the Tariff Act of 1922 and the Tariff Act of 1930, without material change in the phraseology of these wool provisions, it seems reasonable that the holding in the *Bloomingdale* case ought not now to be reversed on the grounds that it was erroneous when made. In such cases, as has been well said, repose is more essential than strict technical accuracy, especially when such accuracy may be based upon scientific testimony upon which there may be and generally are differences of opinion. "If it was conceded that these decisions were erroneous, we believe it would be harmful rather than helpful to make any change, at this time, in our former rulings on this question. The courts, and this court especially, in passing upon close questions of construction in tariff legislation, have stressed the importance of uniformity of decision and of settled and well understood administrative practice. The persuasiveness of the fact that a position, technically more correct, might be arrived at by the consideration of fine distinctions when reviewed under a new statement of facts, must yield to the advantages to be derived by all parties concerned from a policy affecting the levying of customs duties, which is well understood and acquiesced in." *United States* v. *Basket Importing Co.*, 13 Ct. Cust. Appls. 98, T. D. 40941.

It was also orally argued that the trial court committed error in the exclusion of certain testimony offered by the importer. This testimony consisted largely of advertisements clipped from newspapers and magazines. We are of opinion this alleged error was not sufficiently assigned. *United States* v. *Belgam Corp.*, 22 C. C. P. A. (Customs) 402, T. D. 47402, decided concurrently herewith.

The judgment of the United States Customs Court is *affirmed.*

### DISSENTING OPINION

GARRETT, Judge: The first construction by this court of the language now contained in paragraph 1121 of the Tariff Act of 1930 seems to have been made in the cases (two cases being heard together) of *Crimmins & Pierce et al.* v. *United States* and *United States* v. *Ringk & Co.*, 6 Ct. Cust. Appls. 137, 141, T. D. 35392, where after stating that the purpose of the paragraph (par. 304 of the 1913 act) "is, of course, to include within the paragraphs [various paragraphs of the wool schedule of said 1913 act] and at the rates of duty therein prescribed all similar materials", the court continued:

"Like" animals, therefore, does not refer to physical construction or appearance of the animal itself, but to the fleece produced by and from the animal; and, therefore, embraced within the scope of other like animals must be included all animals producing wool or hair like that of the sheep or camel, of which the hair of the Angora goat, alpaca, and others are distinctly and unquestionably of a class.

The merchandise involved in those cases seems to have been some character of mohair which came from the Angora goat, and its classification was determined by applying paragraph 304 of the 1913 tariff act as construed in the above-quoted language.

In the case of *Bloomingdale Bros.* v. *United States*, 8 Ct. Cust. Appls. 104, T. D. 37221, the merchandise involved was "yarn made of the hair of the Angora rabbit", being so far as here material, identical in character with the merchandise at bar. This court there reiterated, approved and applied the construction given the language in the *Crimmins & Pierce et al.* and *Ringk & Co.* cases, *supra*.

So far as the *construction of the statute* is concerned, therefore, I regard the doctrine of *stare decisis* as being applicable here, or, in any event, I think there has been legislative adoption of that construction, by reason of the continuation of the language unchanged in both the Tariff Act of 1922 and that of 1930.

But, to my mind, a distinction must here be made between the *construction of a statute* and a question of fact. The former is generally a purely legal question to be determined from the context of the law, while the latter is one to be established by satisfactory evidence.

In the *Bloomingdale Bros.* case, *supra*, the court was obviously convinced from the record that the material involved was like that of other animals in the paragraph, or at least the evidence did not show otherwise. Hence the court's conclusion there, under the legal meaning given the language, was natural and logical.

In the instant case, however, it seems to me to be established by uncontradicted testimony that the merchandise is *not* like that of other animals named in the paragraph. Hence it seems to me that the conclusion reached by the majority does violence to the construction of the statute which I regard as having received legislative sanction. Since the material at issue is, in my opinion, conclusively shown, as a matter of fact, to be not like the material derived from the other named animals, I regard it as being clearly excluded.

In the *Crimmins & Pierce et al.* and *Ringk & Co.* cases, *supra*, the hair of the Angora goat and alpaca is specifically named as being "distinctly and unquestionably of a class" with the hair of the "sheep or camel." In the *Bloomingdale Bros.* case, *supra*, upon the evidence there presented, the hair of the Angora rabbit was given like treatment, not simply as a matter of *law*, but because of the finding of *fact*. The evidence here presented shows the fact with respect to this importation to be different from that which the record in the prior case showed the fact to be with respect to that importation.

I respectfully dissent.