EISEMAN-LUDMAR CO., INC. v. UNITED STATES

Court No. 73-6-01552

(Decided July 9, 1975)

*Barnes, Richardson & Colburn (Richard C. King* and *Earl R. Lidstrom* of counsel) for the plaintiff.
*Rex E. Lee,* Assistant Attorney General (*Steven P. Florsheim,* trial attorney), for the defendant.

BOE, Chief Judge: The merchandise concerning which the within cause of action relates is described on the commercial and special customs invoices as "fur felts," imported from Japan and entered at the port of New York on November 4, 1971, January 17, 1972 and November 1, 1972. Upon liquidation by customs officials the articles were classified by similitude under item 798.00, TSUS, at the rate of 12% or 10% ad valorem, derived, in turn, from item 124.60, TSUS, as modified by T.D. 68-9, providing:

Schedule 7, Part 14, TSUS

      Any article, not provided for elsewhere
        in these schedules:
           Which is similar in the use to which
             it may be applied to any article
             or articles enumerated in any of
             the foregoing provisions of these
             schedules as chargeable with duty:

(1)

| | | |
|---|---|---|
| 798.00 | Most resembling as to use a particular enumerated article chargeable with duty_____ | The same rate of duty as the particular enumerated article which it most resembles as to use |

Schedule 1, Part 5, Subpart B, TSUS

| | | |
|---|---|---|
| * * * | Skins bearing wool or hair of a kind described in subpart C of part 1 of schedule 3, raw or not dressed, if suitable for use as furs without the removal of the wool or hair from the skins (except removal resulting in an unsought residue of wool or hair incidental to processing of the skins for use as furs) and imported to be so used_____ | * * * |
| | * * * * * * * | |
| * * * | Furskins of the silver, black, or platinum fox (including those of any fox which is a mutation, or type developed, from silver, black, or platinum foxes), whether or not dressed_____ | * * * |
| | Other furskins, raw or not dressed, or dressed: | |
| | * * * * * * * | |
| | Dressed: | |
| | * * * * * * * | |
| | Dyed: | |
| 124.60 | Plates, mats, linings, strips, crosses, or similar forms__ | 12% ad val. [or 10% depending upon the date of entry] |

The plaintiff, however, having abandoned its alternative claim for classification under item 798.00, TSUS, by similitude, contends that the merchandise in question is properly classified as hair felt under item 790.23, TSUS, as modified by T.D. 68-9, providing:

Schedule 7, Part 13, Subpart A, TSUS

790.23     Hair felt, and articles thereof, not specially provided for_____ 4.5% ad val. [or 4% depending upon the date of entry]

At the trial the following stipulations were entered into between respective counsel:

   (1) That the plaintiff invoices the subject merchandise and merchandise identical in all material respects thereto upon its resale in the United States as No. AG 244 fur felts, Serial No. 1–1187–H.

   (2) That the fibers composing the subject felts are obtained from rabbits. (R. 3–4.)

It has been established by statute as well as by rule of court that the burden rests upon the plaintiff to overcome the presumption of correctness which attaches to the classification made by the collector of customs. In so doing, the plaintiff must not only prove that the classification made by the collector is erroneous but also that the classification urged by the plaintiff is correct. Section 2635, title 28, U.S.C., as amended by the Customs Courts Act of 1970. *United States. v. New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004, 435 F.2d 1315 (1970); *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States*, 47 CCPA 88, C.A.D. 735 (1960).

It is further presumed that the collector of customs has found every fact to exist that is necessary to sustain the classification so made by him. *United States* v. *Marshall Field & Co.*, 17 CCPA 1, T.D. 43309 (1929).

Conceding that the imported merchandise in question is a felt made from fur, the plaintiff contends, however, that in the absence of any contrary legislative intent the common meaning of an *eo nomine* provision includes all forms of the article and that, accordingly, fur in the same manner as wool and bristle is included within the generic term, "hair". It further contends that the term "hair felt" as referred to in item 790.23, TSUS, thus in turn includes felt made from all forms and varieties of hair. Concluding its rationale, the plaintiff submits that the foregoing conclusion overcomes the presumption of correctness attached to the collector's classification.

This court is not in disagreement with plaintiff's contention that "hair" is a generic term. However, by the acceptance of that fact it does not follow, per se, that "hair felt," as referred to in item 790.23, TSUS, includes all felts made from any form or variety of animal hair and specifically the merchandise in question. The plaintiff's burden, indeed, is more onerous than to reach a conclusion of questionable logic through the use of syllogistic premises which are, in fact, *non sequitur*. No testimony or evidence with respect to the meaning or definition of the term "hair felt," nor a description of the manner in which it is manufactured nor any evidence as to its use in the manufacturing of hats or caps has been offered. From the plaintiff's single supporting witness, it appears that the principal evidence established consists of the facts that the felt in question (plaintiff's exhibit 1) was imported in strips of one piece 18" in width and 45" in length; that the merchandise is used to make United States Army officer caps and conforms to the requirements of army specifications relating to the fur felt to be used in the manufacture of such army caps (plaintiff's exhibits 2 and 3).

The defendant has submitted evidence describing in detail the provisions to which a rabbit pelt is subjected in order to produce a "hatters fur" used in the manufacture of fur felt hats. It appears that after certain preliminary steps involving the cleaning of the pelt and the shearing of the surface hair, the fur fibers remaining on the pelt are impregnated with an acid solution. These fur fibers, after undergoing such a "carroting" process, are clipped from the pelt and thereafter used in the manufacture of fur felt. It further appears that fur felt, also known as hatters fur, is the name commonly ascribed to that felt from which hats are manufactured.

Neither from the testimony or evidence adduced nor from a review of the present tariff schedules or prior tariff acts does it appear that the classification "hair felt" was intended to include "fur felt" used in the manufacture of hats or caps. Item 790.23, TSUS, has its derivation from paragraph 1525 of the Tariff Act of 1930 and paragraph 1426 of the Tariff Act of 1922 which referred to "hair felt, made wholly or in chief value of animal hair, not specially provided for." Despite the long continued inclusion of the term "hair felt" in successive tariff acts, no definitive description or meaning of the article has been made either in prior court decisions or elsewhere other than in discussions relating thereto found in the respective summaries of tariff information.

In the Summaries of Trade and Tariff Information (1968), Schedule 7, Vol. 8, p. 53, the following comment is noted:

Hair felt is a coarse fabric generally made by matting or interlocking animal hair into compact sheets of various thicknesses by a combination of mechanical and chemical processes and the application of moisture and heat. Hair felt is produced also by the needle loom process by mixing hair with other fibers such as wool

or jute. The great bulk of the U.S. output of hair felt is produced from cattle hair obtained from domestic tanneries. Hair felt has many uses, the principal ones being insulation in construction, padding in upholstering, and pads for polishing, for example, polishing color TV picture tubes and automobile glass. [See also summaries of Tariff Information (1948), Vol. 15, Part 3, pp. 40–41. Summary of Tariff Information (1921), relative to H.R. 7456, 67th Cong., p. 1142.]

From the foregoing comment it would appear that neither the description nor the use of "hair felt" bears little resemblance to the description or the use of "fur felt."

In the opinion of the court, several cases cited by the plaintiff do not serve to substantiate the construction sought to be placed thereon by the plaintiff.[1] It is true that in each of said decisions the appellate court, in effect, recognized that "hair" is a generic term and that fur, wool and bristle are varieties and types thereof. No attention, however, has been given to the further delineative reasoning expressed by the appellate court in its determination that the classification of a type of hair for tariff purposes may be dependent upon additional factors including length, quality and the use thereof. Thus in the case of *Bloomingdale Bros.* v. *United States*, 8 Ct. Cust. Appls. 104, T.D. 37221 (1917), our appellate court stated:

> * * * A true fur does not differ materially from a true wool, which, like fur, is a modified form of *hair* and is distinguished by its fine, soft, and curly nature and by pointed scales or plates attached to the filament. (See "Wool, Characteristics of," New International Encyclopedia.) Indeed, fur and wool, when separated from the skin, are substantially of the same nature and have no marked points of difference, with the exception, perhaps, that wool, as a usual rule, is of a longer staple than fur. * * * If the *hair* is so short that it is commercially unfit to be spun into yarn or for the making of textiles, and is chiefly employed in the making of *furs* or *fur* garments, or for other *fur uses*, it is that kind *of hair which is known as fur*, though it be taken from the back of a sheep. If, on the other hand, the hair possesses all the characteristics of fur, but is so long and of such quality that it can be spun into yarn and converted into cloth and is chiefly used for that purpose, it should be classified as a *wool* or as *hair other than fur*. * * * [P. 106.] [Emphasis added.]

From the record before us, therefore, it appears that the plaintiff has failed to meet the twofold burden of proof incumbent upon it. It has neither overcome the presumption of correctness which follows the classification of the customs collector nor has it established that the classification which it urges is correct. Accordingly, the claim sought by the plaintiff for the classification of the merchandise in

---

[1] *Bloomingdale Bros.* v. *United States*, 8 Ct. Cust. Appls. 104, T.D. 37221 (1917); *American Bristle & Hair Drawing Co., Keer Maurer & Co.* v. *United States*, 59 CCPA 104, C.A.D. 1048, 458 F.2d 524 (1972) and *Ayres Bridges & Co. et al.* v. *United States*, 8 Ct. Cust. Appls. 87, T.D. 37201 (1917)

6

question under item 790.23, TSUS, is overruled and the cause of action is dismissed.

Let judgment be entered accordingly.