EISEMAN-LUDMAR CO., INC., PLAINTIFF *v.*
UNITED STATES, DEFENDANT

(Court No. 76-1-00117)

(Decided July 28, 1981)

*Fitch, King & Caffentzis* (*Richard C. King* at the trial and on the brief) for the plaintiff.

*Stuart E. Schiffer*, Acting Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Robert H. White* at the trial and on the brief), for the defendant.

BOE, *Judge*. The subject merchandise described in the invoices as "fur felts" was imported by the plaintiff from Japan and entered at the port of New York between December 27, 1974 and July 16, 1975. Upon liquidation the merchandise was classified under item 798.00, TSUS, by similitude to item 124.60, TSUS, as modified by T.D. 68–9, providing:

SCHEDULE 7, PART 14

Any article, not provided for elsewhere in these schedules:

Which is similar in the use to which it may be applied to any article or articles enumerated in any of the foregoing provisions of these schedules as chargeable with duty:

798.00 Most resembling as to use a particular enumerated article chargeable with duty_____ The same rate of duty as the particular enumerated article which it most resembles as to use.

SCHEDULE 1, PART 5, SUBPART B

Other furskins, raw or not dressed, or dressed:

\* \* \* \* \* \* \*

Dressed:

\* \* \* \* \* \* \*

124.60 Dyed:

Plates, mats, linings, strips, crosses, or similar forms_ _ _ _ _ 10% ad val.

The plaintiff contends that the merchandise in question is classified under item 703.35, TSUS, as modified by T.D. 68-9. The relevant statutory provisions provide:

SCHEDULE 7, PART 1, SUBPART B

*Subpart B headnote:*

1. For the purposes of this subpart—

(a) the term *"headwear"* includes hats, caps, berets, bonnets, hoods, and all other head coverings, of whatever material composed (*including* bodies, forms, plateaux, manchons, and shapes for headwear), designed for human wear, except infants' knit headwear, but does not include mufflers, scarves, shawls, mantillas, veils, and similar articles; hair nets; hair ornaments; or wigs and similar articles; * * * [Emphasis supplied.]

Headwear, of fur not on the skin:
For men or boys:

|       |       |       |       |       |       |       |       |       |
|-------|-------|-------|-------|-------|-------|-------|-------|-------|
| *     | *     | *     | *     | *     | *     | *     | *     |       |

703.35  Valued over $30 per dozen_____  $2.75 per doz. + 4% ad val.

For other persons:

|       |       |       |       |       |       |       |
|-------|-------|-------|-------|-------|-------|-------|
| *     | *     | *     | *     | *     | *     | *     |

703.35  Valued over $30 per dozen_____  $3.40 per doz. + 5% ad val.

In its answer, the defendant asserts as an alternative claim that the merchandise in question is classified under item 186.20, TSUS, at the rate of 15% ad val. and as a second alternative claim that the subject merchandise is classifiable under item 703.55, TSUS, as modified by T.D. 68-9.

By prior order of this court under date of June 29, 1979 in which plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment were denied, the record in the cause of action of *Eiseman-Ludmar Co.* v. *United States*, 73-6-01552, 75 Cust. Ct. 1, C.D. 4603 (1975), has been incorporated into the record of the within proceedings, pursuant to the motion of the plaintiff and the consent thereto by the defendant.

In addition to the evidence relating to the subject merchandise and the manner of its processing prior to its exportation from Japan presented in the proceedings incorporated herein, the following facts with respect to the subject merchandise, its processing and its subsequent use are deemed established without contradiction in the present proceedings. The rabbit fur from which the subject merchandise is made is imported into Japan for use by the manufacturer, the Fuji

Company, after the same has been cut from the skin. The testimony of Mr. Kusumoto, managing director of the Fuji Company, establishes that the subject merchandise was formed in a cylindrical or cone shape and there-after slit in order to produce a flat rectangular sheet of felt which at the time of importation was of a size of approximately 18″ by 45″. The merchandise as manufactured met specifications required by the United States Military Service and after importation was sold by the plaintiff only to domestic companies for the manufacture of United States Army officer hats.

Having failed to find a definition of the term "manchon" in lexicographic sources, the plaintiff, in its effort to establish the classification of the subject merchandise under item 703.35, TSUS, places principal reliance on the Brussels Nomenclature. The similarity between the provisions therein and the Tariff Schedules of the United States and particularly headnote 1, subpart B, as the same relates to headwear, is, indeed, significant. The Explanatory Notes to Section XII, Chapter 65 of the Brussels Nomenclature (1955) relating to Headgear and Parts Thereof provide in pertinent part:

65.01 HAT-FORMS, HAT-BODIES AND HOODS OF FELT, NEITHER BLOCKED TO SHAPE NOR WITH MADE BRIMS; PLATEAUX AND MANCHONS (INCLUDING SLIT MANCHONS), OF FELT

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(B) The heading also includes:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) *Felt Manchons*—usually made of fur on a cylindrical form (about 40 cm in height and about 100 cm in circumference) by a similar suction process to that used for making fur-felt cones. They are normally used by milliners, and are classified in this heading whether in cylinders or slit into rectangular form.

The court recognizes the use of this source in determining the meaning of terms contained in the provisions thereof which are similar to the provisions contained in the Tariff Schedules of the United States. *J. E. Bernard & Co.* v. *United States*, 60 Cust. Ct. 296, C.D. 3372 (1968). From the evidence presented in this proceeding the court acknowledges that the subject merchandise at the time of importation may have borne the characteristics of a "slit manchon" as contemplated by headnote 1, subpart B, part 1, schedule 7. However, the burden of the plaintiff in sustaining its claimed classification is not fulfilled solely by demonstrating that the subject merchandise falls within the definition of "headwear" provided for in headnote 1, subpart B. The superior heading, under which item 703.35, TSUS, is included—"headwear, of fur not on the skin," is limited by the inferior heading thereto—"For men or boys." Thus, in conformity with the chief use defined in the inferior heading of the statute, the plaintiff likewise has the burden to establish that

the imported merchandise would be of a class or kind of slit manchons of fur felt chiefly used in headwear "For men or boys."

It is undisputed that the subject merchandise in its manufacture conformed to the specifications required by the United States Army relating to materials to be used in Army officers' hats. It likewise appears undisputed that the plaintiff sells the merchandise in question only to military hat manufacturers in the United States of which there are a total of five or six in number. Although Mr. Larsen, sales manager and president of the plaintiff, testified that no "fur felts" other than the subject merchandise, represented by Exhibit 1, were used by the military, he subsequently amplified his testimony by stating:

> A. My testimony is we only import fur felt to be used for the military. I don't know what the rest of the market uses. That's not my business. R. 39.

Mr. Larsen further acknowledged that women's military hats and berets are made from fur felt hoods of blue or white color. Whether the specifications by the military for such women's headwear are the same as for the subject merchandise imported by the plaintiff was not known by him.

It likewise appears from the testimony of the import specialist, Mr. Eyskens, that in his investigation and inquiries as to the characteristics of "manchons" and their uses, he learned that these articles were used in the manufacture of headwear for "—men, ladies—whatever." R. 66. In a response to an inquiry with respect to the meaning of the term "manchons" and their use made by Mr. Eyskens to an "old timer in the trade," a letter particularly describing the article bearing this seldom-used name was submitted by the plaintiff in evidence. Plaintiff's Exhibit 8. Of particular interest is paragraph 2 thereof in which the writer referred to the historical use of "manchons" in the manufacture of ladies' headwear:

> This article, which is felted in a similar way to ordinary fur felt hoods or capelines, was formerly used extensively in the manufacture of ladies' headwear. Generally the article was cut into a flat piece and then using the article like a piece of cloth, patterns would be cut and stitched together to make a hat. In this way it was used differently from a fur felt hood or capeline where the entire hat was usually blocked in one piece and only then cut to accommodate a particular shape.

From the evidence submitted the court is unable to find that the subject merchandise is of a class or kind of slit manchons of fur felt chiefly used in headwear "for men or boys." As hereinbefore stated, the testimony of plaintiff's principal witness, Mr. Larsen, clearly indicated that his knowledge is restricted only to the use of the imported merchandise by his own company and that he possessed no

knowledge as to the use employed with respect to merchandise of the same class or kind by others. On the contrary, all of the evidence reflects that slit manchons of fur felt could be and were used in the manufacture of ladies hats. The fact that the plaintiff imported the merchandise in question only for sale to domestic companies in thier manufacture of United States Army officer hats cannot serve to bring the imported merchandise within the limiting provisions of plaintiff's claimed classification, item 703.35, TSUS. *W. A. Gleeson* v. *United States*, 58 CCPA 17, 432 F. 2d 1403 (1970); *E. Dillingham, Inc.* v. *United States*, 54 CCPA 121, C.A.D. 922 (1967).

At the conclusion of the trial in the instant action, plaintiff moved to amend its complaint alleging classification of the subject merchandise under item 703.35, TSUS, by similitude. Although the court sustained defendant's objection to plaintiff's motion as being untimely, it is evident that a classification under item 703.35, TSUS, by similitude, cannot be sustained.

Paragraph 1559, Tariff Act of 1930, was amended by the Customs Simplification Act of 1954 (68 Stat. 1136) by the terms of which "use" has been designated the principal factor governing classifications by similitude.

Thus, where the subject merchandise is precluded from classification under item 703.35, TSUS, because of the limiting provision appurtenant thereto, it cannot be relieved from this use requirement by the application of the similitude provisions of the statute. As stated in *United States* v. *Steinberg Bros.*, 47 CCPA 47, C.A.D. 727 (1959):

> No application of the similitude provision of the statute can put merchandise into a classification from which it is expressly excluded. At 50.

It appearing to the court, therefore, that the plaintiff has failed in its burden to establish its claimed classification with respect to the subject merchandise, the protest of the plaintiff, accordingly, is overruled and the above-entitled action dismissed.

Let judgment be entered accordingly.